The Honorable Thomas D. Deen Prosecuting Attorney Tenth Judicial District 506 South Main Street Monticello, Arkansas 71655
Dear Mr. Deen:
I am writing in response to your request for an opinion on the county clerk's duties under A.C.A. § 14-14-915(d) (Repl. 1998). You ask:
 1. Is a clerk authorized to reject a petition signature based upon the clerk's determination from an examination of the signature that it is not genuine?
 2. To make such a determination, must a clerk necessarily possess or rely upon a person who possesses formal training or expertise in handwriting analysis?
 3. Assuming a petition is found to be otherwise sufficient, is a clerk required to accept all petition signatures that purport to be those of registered voters without regard to the genuineness of such signatures?
RESPONSE
I cannot provide a conclusive response because the statute about which you ask is silent on your questions. As a practical matter, however, if the clerk's decision is challenged, it will need to withstand judicial review. Thus, the case law will be partially helpful in answering your questions. But the Arkansas appellate courts have not squarely ruled on your questions either. Thus, my responses to your *Page 2 
questions are extrapolations from similar Arkansas Supreme Court cases. With respect to your first and second questions, A.C.A. § 14-14-915(d) (Repl. 1998) is clear that the county clerk must "examine and ascertain" the petition's sufficiency, which includes whether signatures are genuine. The statute does not give any guidance on how clerks should evaluate signatures for genuineness. In my opinion, if someone challenges the clerk's decision in circuit court, the clerk's personal assessment of a signature's genuineness would be relevant, but probably insufficient — b y itself — t o withstand judicial review. In any case, judicial review will be a highly factual matter. As for your third question, the statute clearly requires the clerk to determine whether petition signatures are genuine.
Question 1: Is a clerk authorized to reject a petition signature basedupon the clerk's determination from an examination of the signature thatit is not genuine?
Arkansas Const. art. 5, § 1 permits the people of Arkansas to initiate ballot measures. Before an initiative or referendum may appear on the ballot, a sufficient number of qualified electors must sign a petition to that effect. Most of the requirements for petitions on county initiatives or referendums are explained by A.C.A. § 14-14-915. Subsection 14-14-915(d) requires the county clerk to certify the petition's "sufficiency" to both the quorum court and the county board of election commissioners. While the statute does not define what "sufficiency" entails, it clearly includes the county clerk's assessment of the signatures' genuineness. If the clerk determines a signature is not genuine, the burden shifts to the petition's sponsor to validate the genuineness of all the signatures that appear on the affected petition sheet. A.C.A. § 14-14-915(d).
Subsection 14-14-915(d) states:
 Within ten (10) days after the filing of any petition, the county clerk shall examine and ascertain its sufficiency. Where the petition contains evidence of forgery, perpetuated either by the circulator or with his connivance, or evidence that a person has signed a name other than his own to the petition, the prima facie verity of the circulator's affidavit shall be nullified and disregarded, and the burden of proof shall be upon the sponsors of petitions to establish the genuineness of each signature. If the petition is found sufficient, the clerk shall immediately certify such finding to the county board of election commissioners and the quorum court *Page 3 
The statute requires the clerk to review the petition for two types of non-genuine signatures: "evidence of forgery" caused or permitted by the circulator; or evidence that someone has signed a name "other than his own" to the petition. These two items appear slightly different. The first item, forgery, appears to require an element of subjective intent to deceive. Black's defines "forgery" as [1] "the act of fraudulently making a false document or altering a real one to be used as if genuine . . . [2] A false or altered document made to look genuine by someonewith the intent to deceive." Black's Law Dictionary 677 (Bryan A. Garner ed., 8th ed., West 2004) (emphasis added). The second item involves signing another's name, presumably regardless of whether the signer intended to deceive. An example of the first, forgery, would be the circulator herself writing in names on the petition. An example of the second would be a wife writing her husband's name with his permission. The statute is silent about how the clerk conducts either type of review.
As a practical matter, however, because the statute permits an appeal of the clerk's decision to the circuit court, the clerk's decision will need to withstand judicial scrutiny if challenged. Thus, cases reviewing circuit court action on county-wide petitions will assist us in determining the two sub-questions at play here: 1) what facts count as evidence of a non-genuine signature; and 2) how much evidence is needed to shift the burden to the petition's sponsors? No Arkansas case has given a taxonomy of what facts count as evidence. And no Arkansas case has definitively described the amount of evidence needed to shift the burden to the petition's sponsors. There are some cases, however, that provide some indirect instruction on both sub-questions. Mays v.Cole, ___ Ark. ___, ___ S.W.3d ____ (Nov. 3, 2008); Save Energy ReapTaxes v. Shaw, ___ Ark. ___, ___ S.W.3d ____ (Oct. 16, 2008). As for the first sub-question — what facts count as evidence of either forgery or that someone has signed another's name — M a y s and Shaw are helpful.Mays permitted an affidavit from someone swearing that, even though his name appeared on the petition, he never signed it. Thus, this kind of "direct evidence" counts as evidence of a non-genuine signature.Shaw affirmed the circuit court's decision invalidating several signatures based on the circuit court's assessment of four pieces of evidence: expert testimony; testimony from the petition's circulator that some people signed other peoples' names; the circuit judge's "own review of the petition"; and the "testimony of witnesses whose signatures were purportedly invalid." Thus, we can conclude that the layman's opinion counts as evidence because the circuit *Page 4 
judge's opinion counted as evidence. We can conclude from these two cases, that each item may be a fact tending to show a signature is not genuine.
The next sub-question — how much evidence is required to shift the burden — is less clear.[1] I have not located any Arkansas authority for the proposition that a layman's assessment of handwriting is sufficient — b y itself — to shift the burden. Cases in which a single piece of evidence was sufficient tend to be direct evidence. For example, direct evidence could be, as in Mays, someone swearing (by testimony or affidavit) that even though his name appears on the petition, he never signed it. According to Mays, this type of direct evidence is sufficient to shift the burden to the petition's sponsor. Other types of proof appear to be considered cumulatively, as inShaw, and will be determined on a case-by-case basis. UnderShaw, a layman's opinion appears relevant, but insufficient, by itself, to determine genuineness.
In summary, the statute does not clearly answer your question. As a practical matter, however, if the clerk's decision is challenged in court, it will need to withstand judicial scrutiny. Thus, the cases explaining what counts as evidence of a non-genuine signature and what counts as sufficient evidence in the circuit court context are instructive but not exhaustive. Nor are the cases entirely clear about how much evidence is required to shift the burden to the petition's sponsors. Nevertheless, Mays appears to establish that a sworn statement by someone whose name appears on the petition that the person never signed the petition, is sufficient to shift the burden to the petition's sponsors. Absent that kind of direct evidence, a court, in my opinion, will probably evaluate the pieces of evidence as a cumulative whole. Under that cumulative analysis, the layman's opinion appears relevant, but insufficient, by itself, to shift the burden.
Question 2: To make such a determination, must a clerk necessarilypossess or rely upon a person who possesses formal training or expertisein handwriting analysis?
In my opinion, for the reasons expressed above, the clerk need notnecessarily possess expertise in handwriting analysis when forming his or her personal opinion about whether a signature was genuine. The clerk's opinion, whether *Page 5 
layman or expert, is relevant; but it is probably insufficient, by itself, to survive a court challenge, in my opinion.
Question 3: Assuming a petition is found to be otherwise sufficient,is a clerk required to accept all petition signatures that purport to bethose of registered voters without regard to the genuineness of suchsignatures?
If you are asking whether the clerk can avoid reviewing the genuineness of the signatures, the answer is, "no," in my opinion. The statute clearly requires county clerks to determine the sufficiency of the petition, which includes assessing whether the signatures are genuine.
Assistant Attorney General Ryan Owsley prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
DM:RO/cyh
[1] With regard to the county clerk's office, it may be that any one of these pieces of evidence would be sufficient to shift the burden to the petition's sponsor. The Mays court made clear that it was unnecessary to prove that a signature was not genuine before the burden shifts. But neither Mays nor Shaw explained what lesser standard is needed to shift the burden. *Page 1